## MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY v. MISSOURI RAILROAD AND WAREHOUSE COMMISSIONERS.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 11.  Argued and submitted October 16, 1901.—Decided November 11, 1901.

When a state court refuses permission to remove to a Federal court a case pending before the state court, and the Federal court orders its removal, this court has jurisdiction to determine whether there was error on the part of the state court in retaining the case.

The plaintiffs were citizens of the State of Missouri, in which this action was brought. The railway company was a citizen of the State of Kansas. On the face of record there was therefore diverse citizenship, authorizing, on proper proceedings being taken to bring it about, the removal of the action from the state court to the Federal court; and the State of Missouri is not shown to have such an interest in the result as would warrant the conclusion that the State was the real party in interest, and the consequent refusal of the motion for removal.

THIS case involves the question of removal from a state to a Federal court.

The State of Missouri has a body of statutes for the regulation of railroads. By one section a board of railroad commissioners is created. To this board is committed the duty of supervising the conduct and charges of railroads, of hearing and deciding complaints against them, and making such orders as the circumstances require. Section 1143, Rev. Stat. Missouri, (1899), identical with section 2646, Rev. Stat. Missouri, (1889), contains this provision :

"SEC. 1143. Commissioners to See to Enforcement of Article—Investigate Complaints.—It shall be the duty of the railroad commissioners of this State to see that the provisions of this article are enforced. When complaint is made in writing by any person having an interest in the matter about which complaint is made, that any rate or rates established by any common carrier are unreasonable, unjust or extortionate, or that any of the provisions of this article have been or are being violated, it shall be the duty of said railroad commissioners to proceed at once to investigate such complaint and determine the truth of the same."

The section also authorizes the commissioners to summon witnesses, to punish for failure or refusal to attend or testify, declares that any common carrier wilfully or knowingly obstructing or preventing the commissioners from making such investigations shall be deemed guilty of a misdemeanor and punished by a fine. Other sections provide for penalties and forfeitures. In section 1144, the same as section 2647, Rev. Stat. 1889, is this clause :

"SEC. 1144. Forfeitures, How Recovered and Disposed of.— The forfeitures and penalties herein provided for shall go to the county school fund of the county where sued for, and may be recovered in a civil action in the name of the State of Missouri, at the relation of the board of railroad commissioners to the use of said fund."

Section 1150 (sec. 2653, Rev. Stat. 1889) reads as follows :

"SEC. 1150. Proceedings when Order of Commissioners is Disobeyed—Circuit Court—Enforce or Renew Order—Proceed-

ings.—Where the complaint involves either a private or a public question as aforesaid, and the commissioners have made a lawful order or requirement in relation thereto, and where such common carrier, or the proper officer, agent or employé thereof, shall violate, refuse or neglect to obey any such order or requirement, it shall be lawful for the board of railroad commissioners, or any person or company interested in such order or requirement, to apply in a summary way, by petition, to any circuit court at any county in this State into or through which the line of railway of the said common carrier enters or runs, alleging such violation or disobedience, as the case may be; and the said court shall have power to hear and determine the matter on such short notice to the common carrier complained of as the court shall deem reasonable. And such notice may be served on such common carrier, its officers, agents or servants in such manner as the court may direct; and said court shall proceed to hear and determine the matter speedily in such manner as to do justice in the premises; and to this end said court shall have power, if it thinks fit, to direct and prosecute in such mode and by such persons as it may appoint, all such inquiries as may seem needful to enable it to form a just judgment in the matter of such petition. On such hearing the report of said commissioners shall be *prima facie* evidence of the matter therein stated; and if it be made to appear to the court on such hearing, or on report of such persons appointed as aforesaid, that the lawful orders or requirements of such commissioners drawn in question have been violated or disobeyed, it shall be lawful for such court to issue a writ of injunction or other proper process, mandatory or otherwise, to restrain such common carrier from further continuing such violation of such order or requirement of said commissioners, and enjoin obedience to the same. If such court shall hold and decide that any order of said board of railroad commissioners involved in such proceeding was not a lawful order, said court shall, without any reference to the regularity or legality of the proceedings of said board or of the order thereof, proceed to make such order as the said board should have made, and to enforce said order by the process of said court, and to enforce and collect

the forfeitures and penalties herein provided in all respects according to the provisions of this act. And in case of any disobedience of any such injunction or other proper process, mandatory or otherwise, it shall be lawful for such court to issue writs of attachment, or other proper process of said court incident or applicable to writs of injunction or other proper process, mandatory or otherwise, against such common carrier; and if a corporation, against one or more of the directors, officers or agents of the same, or against any owner, lessee, trustee, receiver or other person failing to obey such writ of injunction or other process, mandatory or otherwise; and said court may make an order directing such common carrier or other person so disobeying such writ of injunction or other process, mandatory or otherwise, to pay such sum of money, not exceeding for each carrier or person in default the sum of one hundred dollars per day, for every day after a day to be named in the order that such carrier or other person shall fail to obey such injunction or other proper process, mandatory or otherwise; and such money shall be payable to the school fund of the county in which such proceeding is pending; and payment thereof may, without prejudice to any other mode of recovering the same, be enforced by attachment or order in the nature of a writ of execution, in like manner as if the same had been recovered by final decree *in personam* in such court. When the subject in dispute shall be of the value of one hundred dollars or more, either party to such proceeding before such court may appeal to the proper appellate court in the State, in the same manner that appeals are taken from such courts in this State in other proceedings involving like sums of money; but such appeal shall not operate to stay or supersede the order of the court or the execution of any writ or process thereon, unless stay of proceedings be ordered by the court from which the appeal is taken, or by the appellate court to which the appeal is taken, upon the application of the appealing party. Whenever any such petition shall be filed by the commissioners as aforesaid it shall be the duty of the attorney general, when requested by said commissioners, to prosecute the same. All proceedings commenced upon such petition shall, upon application of the

petitioner, be advanced upon the docket and take precedence of any other case upon the docket except criminal cases. The cost of such proceedings may be, with the approval of the attorney general and governor of the State, when such suit is brought by any private person, and when brought by said commissioners shall be ordered by the commissioners to be paid, in the first instance, out of any money in the treasury not otherwise appropriated; and if upon final hearing the decision is against the said common carrier or other person against whom the proceeding is being prosecuted, such common carrier or person shall be liable for the costs, for which judgment may be rendered as in any other case."

Under the authority of these statutes, upon a hearing after complaint and notice, the railroad commissioners found that the railway company was charging excessive and illegal rates for travel over what is known as the Boonville Bridge across the Missouri River, and made and entered of record an order directing it to discontinue such charges. This order was dated July 22, 1895. The railway company not complying with the order, a suit was instituted on August 17, 1895, in the Circuit Court of Cooper County, Missouri, by such commissioners, setting forth the facts and praying process, mandatory or otherwise, to restrain the defendant from further continuing to violate the law and the order of the commissioners. The company in due time filed a petition for removal to the Circuit Court of the United States, alleging that it was a corporation created and existing under the laws of the State of Kansas and a citizen of that State, and that the plaintiffs were citizens of the State of Missouri. No question was made as to the sufficiency of the petition and bond in respect to any formal matter. The state court refused to order the removal. Notwithstanding which the railway company took a transcript of the record and filed it in the Federal court, where a motion to remand was made and overruled. 97 Fed. Rep. 113. The state court, after refusing to order the removal, proceeded with the hearing of the case, the railway company declining to take any part therein. On such hearing a decree was entered in accordance with the petition of the railroad commissioners. This decree was ap-

pealed to the Supreme Court of the State, and by that court on June 30, 1899, affirmed, 151 Missouri, 644.

*Mr. George P. B. Jackson* for plaintiff in error.

*Mr. Edward C. Crow* for defendant in error, submitted on his brief, on which was also *Mr. Samuel B. Jeffries.*

MR. JUSTICE BREWER, after making the above statement of the case, delivered the opinion of the court.

The single question presented for our consideration is whether the railway company was entitled to remove this suit from the state to the Federal court. The state court refused the removal, and the Federal court, on the other hand, denied a motion to remand. Under these circumstances this court has jurisdiction to determine whether there was error on the part of the state court in retaining the case. *Removal Cases,* 100 U. S. 457; *Stone* v. *South Carolina,* 117 U. S. 430; *Missouri Pacific Railway Company* v. *Fitzgerald,* 160 U. S. 556, 582.

On the face of the record the railway company was entitled to a removal. The plaintiffs were citizens of Missouri, the State in which the suit was brought. The railway company was a citizen of the State of Kansas. There was, therefore, diverse citizenship, the defendant a citizen of another State than that in which the suit was brought petitioning for removal, and the removal appears perfect in form.

But it was held by the Supreme Court of the State of Missouri that it was proper to go behind the face of the record and inquire who was the real party plaintiff, and, making such examination, that court decided that the real party plaintiff was the State of Missouri. If that conclusion be correct then no removal in this case was justifiable, because a State is not a citizen within the meaning of the Removal Acts. *Stone* v. *South Carolina,* 117 U. S. 430 ; *Germania Ins. Co.* v. *Wisconsin,* 119 U. S. 473 : *Postal Telegraph Cable Co.* v. *Alabama,* 155 U. S. 482.

Was the State the real party plaintiff? It was at an early

day held by this court, construing the Eleventh Amendment, that in all cases where jurisdiction depends on the party, it is the party named in the record. *Osborn* v. *United States Bank,* 9 Wheat. 738. But that technical construction has yielded to one more in consonance with the spirit of the Amendment, and in *In re Ayers,* 123 U. S. 443, it was ruled upon full consideration that the Amendment covers not only suits against a State by name but those also against its officers, agents and representatives where the State, though not named as such, is nevertheless the only real party against which in fact the relief is asked, and against which the judgment or decree effectively operates. And that construction of the Amendment has since been followed. That Amendment refers only to suits brought against a State. But applying the same principles of construction to the Removal Acts and to cases in which it is claimed that the State, though not the nominal is in fact the real party plaintiff, it may be fairly held that the State is such real party when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate. Such a case was *Ferguson* v. *Ross,* 38 Fed. Rep. 161. There an action was brought in the name of Ferguson, a shore inspector, against Ross and others, to recover a penalty. The statute of New York authorized the suit to be prosecuted in the name of the inspector, but all the moneys recovered were payable into the treasury of the State, and it was held by the Circuit Court for the Eastern District of New York that the action was one in which the real party plaintiff was the State. It was for its sole benefit that the action was brought, and it alone was to be benefited by the recovery.

But this case is not like *Ferguson* v. *Ross,* and does not come within the rule above stated. It is not an action to recover any money for the State. Its results will not enure to the benefit of the State as a State in any degree. It is a suit to compel compliance with an order of the railroad commissioners in respect to rates and charges. The parties interested are the railway company, on the one hand, and they who use the bridge, on the other ; the one interested to have the charges maintained as they have been, the others to have them reduced in compliance with the order of the commissioners. They are the real

parties in interest, and in respect to whom the decree will effectively operate.

It is true that the State has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the State, as an organized political community, a party in interest in the litigation, for if that were so the State would be a party in interest in all litigation; because the purpose of all litigation is to preserve and enforce rights and secure compliance with the law of the State, either statute or common. The interest must be one in the State as an artificial person. *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362–390.

While not controverting these general propositions, the Supreme Court of the State was of the opinion that the State had a direct, pecuniary interest in the result of the litigation, by virtue, first, of its possible liability for costs, and, secondly, because were the litigation pushed to the extreme there might be penalties imposed which would when collected pass into the school fund of the State. We quote its language:

"This section of the statute makes provision for a civil action to enforce the requirement in behalf of two classes of persons: First, 'the board of railroad commissioners;' second, 'any person or company interested in such order or requirement.' Now, while in actions under the statute by persons of the second class, which generally will be shippers or passengers, the State has no pecuniary interest, it is not so in actions under this statute by persons of the first class, its board of railroad commissioners. In such actions it abandons its governmental character, enters a court of competent jurisdiction as a suitor under the law, incurs the same liability for costs and expenses as does any other suitor, to be paid under the express provision of the statute out of any money in the treasury not otherwise appropriated, and is moreover pecuniarily interested not only by reason of the liabilities it incurs in the action, but because of its pecuniary interest in the judgments which may be obtained and which when pushed to the final extremity of execution may result in the payment of penalties, not directly into the state treasury, it is true, but into the treasury of one of its political subdivisions for the benefit

of the public schools, to the establishment and maintenance of which its credit is pledged by the organic law.   It seems to us, therefore, that the State in addition to its governmental has a real pecuniary interest in the subject-matter of this controversy, and that the suit is being prosecuted for its benefit in every sense and is not subject to removal to the United States court, and we so hold."

We are unable to concur in these views.   Whatever may be the result of any subsequent or ancillary proceeding the direct object of this suit is to obtain a decree of the court commanding the railway company to comply with the order of the commissioners.   Such a decree is similar to the ordinary decrees of a court of equity, and it is familiar that a court of equity may enforce compliance with its orders and decrees by penalties upon the delinquents.   So that if this possible pecuniary result is sufficient to make the State the real party plaintiff it would follow that in Missouri the State is the real party plaintiff in every equity suit, because in every equity suit such penalties may be imposed.

Neither can it be held that the state's voluntary assumption of the costs of the litigation when the decree is adverse to the railroad commissioners makes it the real party plaintiff.   That is simply an incidental matter and does not determine its relations to the suit any more than its payment of the salary of the judge, fees of jurors or any other expenses of the litigation. We are of opinion, therefore, that the party named in the record as plaintiff is the real party plaintiff, and that the voluntary assumption by the State of the costs in some contingencies of the litigation, or the indirect and remote pecuniary results which may follow from a disobedience of the orders of the court, do not make it the party to whom alone the relief sought enures and in whose favor a decree for the plaintiff will effectively operate.

*The judgment of the Supreme Court of the State of Missouri is reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.*

Mr. Justice Gray was not present at the argument and took no part in the decision of this case.