## STATE OF MISSOURI v. HOMESTEAD-ERS LIFE ASS'N.
### No. 10850.

Circuit Court of Appeals, Eighth Circuit.
May 27, 1937.

Rehearing Denied June 21, 1937.

Jerome Walsh, of Kansas City, Mo., and John M. Wheeler, of Tulsa, Okl. (James P. Aylward, of Kansas City, Mo., and Sam C. Canterbury, on the brief), for appellant.

John B. Gage and David A. Murphy, both of Kansas City, Mo. (Carson E. Cowherd, of Kansas City, Mo., Frank H. Dewey, of Des Moines, Iowa, and Arthur N. Adams, John T. Harding, J. Francis O'Sullivan, and John T. Barker, all of Kansas City, Mo., on the brief), for appellee.

William C. Michaels, of Kansas City, Mo. (Kenneth E. Midgley and Michaels, Blackmar, Newkirk, Eager & Swanson, all of Kansas City, Mo., on the brief), amicus curiæ.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment of dismissal for want of prosecution after the court had denied a motion to remand the case to the state court in which the action had been commenced. (D.C.) 16 F.Supp. 69. The parties will be referred to as they were designated in the lower court, the appellant being plaintiff and the appellee defendant.

From the title of the action it purports to have been instituted by the State of Missouri by its Superintendent of the Insurance Department. It is an action at law. The opening sentence of plaintiff's petition reads as follows: "Comes now the plaintiff, the State of Missouri, a Commonwealth, by and through its duly constituted, appointed, and acting Superintendent of the Insurance Department, R. Emmet O'Malley, and by the authority vested in the said Superintendent of the Insurance Department of the State of Missouri, by virtue of section 5987 Revised Statutes of the State of Missouri, and for cause of action against the defendant, The Home-steaders Life Association, a corporation, alleges and states:" Then follows a statement of the facts constituting the cause of action.

The action was commenced in the circuit court of Jackson county, Mo., but was removed to the United States District Court upon petition of the defendant, which in detail amplified the general allegation that plaintiff was not the State of Missouri but was R. Emmet O'Malley, and hence there was in fact a diversity of citizenship. The removal petition as a separate ground for removal alleged that the controversy arose under the Constitution. Removal to the United States District Court having been effected, plaintiff then filed a petition to remand, which put in issue all pertinent allegations of the petition for removal. The motion to remand was denied. Plaintiff's petition was then amended, and defendant filed answer. The cause was set down for hearing, but plaintiff, denying that the court had jurisdiction, refused to proceed to trial, whereupon the action was dismissed for want of prosecution.

On this appeal plaintiff challenges the propriety of the removal of the case, and that presents for review the question of the jurisdiction of the lower court and the correctness of its order in denying motion to remand.

The action was brought to recover a 2 per cent. gross premium tax, together with interest and attorney fees on all business done by defendant in Missouri from the year 1909 to and including the year 1934. Generally speaking, the original and amended petitions alleged that the defendant company had escaped the payment of this 2 per cent. gross premium tax by masquerading as a fraternal benefit association and as such entitled to exemption therefrom under section 6022, Revised Statutes of Missouri 1929 (Mo.St.Ann. § 6022, p. 4589), but that it was in fact subject to the tax imposed on foreign life insurance companies as provided by section 5979, Revised Statutes of Missouri 1929 (amended by Laws 1931, p. 242, § 1, Mo. St.Ann. § 5979, p. 4556). The briefs of counsel discuss the question as to whether this action could be maintained in view of the admitted fact that defendant had been licensed by the Superintendent of the Insurance Department as a fraternal association, and whether this is not a collateral attack on the license so issued. This conten-

tion, however, goes to the merits of the controversy, which neither the lower court nor this court could properly consider, unless there was jurisdiction in the lower court.

A consideration of the question whether the state was a party to the action involves two inquiries: First, was the Superintendent of Insurance vested with power to maintain an action on behalf of the state; and, second, if he was not, then was this action as brought by him nevertheless an action to which the state was a party?

■ A state is not a citizen and a suit between a state and a citizen or a corporation of another state is not under the judiciary acts between citizens of different states. Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231; Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870.

■ The title to the action is not controlling. "The court will look behind and through the nominal parties on the record to ascertain who are the real parties to the suit." Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 702, 35 L.Ed. 363. See, also, Minnesota v. Hitchcock, 185 U.S. 373, 385, 22 S.Ct. 650, 46 L.Ed. 954; Ex parte State of Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876.

■ Section 11276 of the Revised Statutes of Missouri 1929 (Mo.St.Ann. § 11276, p. 586) provides as follows: "The attorney-general shall institute, in the name of the state, all civil suits and other proceedings at law or in equity requisite or necessary to protect the rights, and interests of the state, and enforce any and all rights, interests or claims against any and all persons, firms or corporations in whatever court or jurisdiction such action may be necessary; and he may also appear and interplead, answer or defend, in any proceeding or tribunal in which the state's interests are involved."

This general statute quite clearly indicates that actions in the name of the state are authorized to be brought only by the Attorney General. The policy behind it, whether wise or unwise, is too well settled to need exposition. Decisions of the Supreme Court of Missouri are to the effect that the state is not a party to an action unless the officer authorized by law instituted the action in its name. Thus in State ex rel. v. Williams, 221 Mo. 227, 120 S.W. 740, 750, it is among other things said: "If the state was the plaintiff in its own behalf, the injunction suit should have been instituted by the Attorney General, and not by the circuit attorney of St. Louis. In our opinion the use of the name of the state by the circuit attorney was entirely unauthorized, and, while advantage might be taken of this in the circuit court and cannot avail here to show want of jurisdiction, it does sufficiently appear that in a legal and constitutional sense the state is not such a party to this suit as to exempt the plaintiff from giving a bond as a condition precedent to the issuing of a temporary injunction."

■ In other jurisdictions it has been held that when the legislative branch of the government has designated certain persons or officers to prosecute or maintain suits in the name of the state, they alone can maintain such suits. Commonwealth v. Helm, 163 Ky. 69, 173 S.W. 389; People v. Navarre, 22 Mich. 1. Generally, a state may sue or be sued only with its consent and in the manner provided by statute. In People v. Navarre, supra, an action of debt had been commenced in the name of the state without authority of the officer authorized by law to commence such action in the name of the state. In the course of the opinion it is said: "But the plaintiff in error [the people] can only appear in this class of cases by some public officer designated by law. They cannot be placed in the attitude of litigants in the courts at the will and by the action of private parties or attorneys. The State can only be recognized by the courts as a suitor in legal proceedings through the agents or representatives appointed by law to speak and act in its name in the matter in hand; and, unless in the given case the proper agent or representative is present, in legal contemplation the State is not present; and this presence of such agent or representative can be made known and attested only by the record. * * * While, therefore, the People are designated as plaintiffs in error in the papers before us, they are not present, indeed are not, according to legal apprehension, parties at all."

■ Section 5678, Revised Statutes of Missouri 1929 (Mo.St.Ann. § 5678, p. 4344), provides that the Attorney General shall be legal adviser of the Superintendent of the Insurance Department, but authorizes him, with the approval of the Governor, to employ other counsel for the purpose of en-

forcing the insurance laws, except in criminal prosecutions. This statute is not, we think, an enlargement of the provisions of section 11276, supra, and it does not purport to authorize the Superintendent of the Insurance Department to commence actions in the name of the state.

The express language of section 11276 as an injunction against the use of the name of the state as a party to litigation is made more emphatic and positive by reference to other related statutes.

■ Section 5985, Revised Statutes of Missouri 1929 (Mo.St.Ann. § 5985, p. 4560), provides as follows: "If any insurance company, organized under the laws of any other state or government, doing business in this state, shall withdraw from business in this state before the annual tax shall fall due according to the provisions of this article, or shall fail or neglect to pay the tax imposed herein, the superintendent of the insurance department shall at once proceed to collect the same, and he is hereby empowered and authorized to employ such legal process as may be necessary for that purpose, and when so collected he shall pay the same into the state treasury."

The tax referred to in the above section is the 2 per cent. gross premium tax imposed upon foreign insurance companies by section 5979.

Section 5987, Revised Statutes Missouri 1929 (Mo.St.Ann. § 5987, p. 4561), is as follows: "In any case where the authority of any insurance company to do business in this state has been or shall be suspended, revoked or withheld for nonpayment of taxes, or for any other cause, or when any company shall voluntarily withdraw from this state, the superintendent of the insurance department may sue and recover, in his own name, in any court in this state having jurisdiction, from any such company, the amount of taxes and license properly chargeable against such company by law, together with costs and reasonable attorney's fees, to be taxed as costs; and in such proceeding, process may issue to any county in the state, and may be served on the agent or attorney appointed under the law to receive or acknowledge service of process, and such service shall be as valid as if served on the company according to the laws of this state in other cases; and when such taxes a.e collected, the said superintendent shall pay the same to the officer entitled to receive the same."

It is to be observed that according to the first sentence of plaintiff's petition, he purports to bring this action "by virtue of section 5987, Revised Statutes of Missouri," but this very section provides that the action shall be brought "in his own name."

It is interesting to note that since 1869 all the expenses of the Department of Insurance of Missouri have been required to be paid out of fees collected from insurance companies. Section 8 of the law which created the department in 1869 provided as follows: "All the expenses of the department hereby created, shall be paid out of the fees and allowances named in this act, and the state shall not become in any manner responsible for any expenses growing out of the creation of this department, or any charges connected therewith."

The present statutes on the subject provide for payment of all expenses of the department from a fund created by fees paid the Superintendent (section 5676, Revised Statutes 1929 [Mo.St.Ann. § 5676, p. 4343]). Section 5679 of the Revised Statutes 1929 (Mo.St.Ann. § 5679, p. 4344) provides, as did the earlier statutes, that the state shall not be responsible for any of the charges or expenses of the department, and this settled policy is consistently carried out in sections 5674 and 5688 of the Revised Statutes 1929 (Mo.St.Ann. §§ 5674, 5688, pp. 4342, 4349).

The Act of 1869 authorized the superintendent to sue for fees and assessments. Section 16 provided: "Suits may be brought by the superintendent in the name of the state to enforce such collection and any company or person, liable for any fees or assessments, who shall neglect or refuse to pay the same within ten days after demand thereof in writing by said superintendent, shall be liable to pay double the amount of such fees or assessments, and any judgment recovered in such case, shall be for double such amount and costs."

At the same time a statute was in force similar to section 11276, supra, authorizing actions on behalf of the state to be commenced and prosecuted by the Attorney General. In 1870, the above-quoted section 16 of the 1869 law was amended so as to read substantially as at present in section 5687, Revised Statutes 1929 (Mo.St.Ann. § 5687, p. 4349), and so as to provide that: "Suits may be brought by said superintendent, as such, to recover any fees or other

sums which he may be by law authorized to demand or collect."

Other related statutes point even more clearly to a separation between the superintendent when bringing suit for taxes or fees, and the state, and indicating a recognition of the Superintendent of the Insurance Department as a separate entity.

Section 5777, Revised Statutes Missouri 1929 (Mo.St.Ann. § 5777, p. 4421), prohibits discrimination, and if violated the superintendent "shall report the same to the Attorney General," and if the company do not refrain, the Attorney General shall institute proceedings to restrain violation. If a domestic company is insolvent, the superintendent may commence proceedings for dissolution, which are to be begun by filing a petition in the name of the superintendent as plaintiff. Section 5942, Revised Statutes 1929 (Mo.St.Ann. § 5942, p. 4530). Upon final judgment of dissolution, title to all assets vests in the superintendent, who may "in his own name * * * maintain and defend all actions in the courts of this or any other state or of the United States, relating to such company, its assets, liabilities and business." Sections 5947, 5948 (as amended by Laws 1933, Ex.Sess., p. 65, § 1) Revised Statutes 1929 (Mo.St.Ann. §§ 5947, 5948, pp. 4534, 4535).

If examination reveals that a domestic fraternal society is in default, the superintendent may present the facts relating thereto to the Attorney General, who shall, if he deem the circumstances warrant, commence an action in quo warranto in a court of competent jurisdiction, but no such proceeding "shall be entertained by any court in this state unless the same is made by the attorney-general." Sections 6016, 6017, Revised Statutes (Mo.St.Ann. §§ 6016, 6017, p. 4586). When a foreign society defaults, the superintendent must "give notice, in writing, to the attorney-general, who shall immediately commence an action against any such association to enjoin the same from carrying on any business. And no injunction against any such association shall be granted by any court, except on application by the attorney-general, at the request of the superintendent of the insurance department." Section 6026, Revised Statutes 1929 (Mo.St.Ann. § 6026, p. 4591). The superintendent, however, may file a petition in writing in the circuit court of any county or city of the state to prevent removal of property of such a society

from the state. Section 6029, Revised Statutes 1929 (Mo.St.Ann. § 6029, p. 4593).

Proceedings against insolvent town mutual insurance companies may be instituted in the circuit court in the city or county in which the principal office is located, but "such proceeding shall be conducted by the attorney-general of the state and in the name of the state of Missouri as plaintiff, at the relation of the said superintendent of insurance." Section 6080, Revised Statutes 1929 (Mo.St.Ann. § 6080, p. 4616).

Section 5986, Revised Statutes (Mo.St. Ann. § 5986, p. 4561), provides a forfeiture of $500, to be assessed against agents who do business for companies whose licenses have been suspended or revoked for nonpayment of taxes, and this forfeiture "may be recovered in the name of the state, to the use of the county, city or town, by indictment."

A consideration of these related statutes reveals a discrimination between an action by the state and one by the superintendent. If the state has not been properly named as plaintiff, it must be disregarded. If, notwithstanding the language of the complaint, the superintendent is the real party in interest, these statutory provisions forbid that by construction the state, without sanction of the duly authorized agency of the state, be considered the real party in interest and hence the plaintiff in fact.

Although it is recited in the complaint that the action is brought by virtue of section 5987, Rev.St.1929 (Mo.St.Ann. § 5987, p. 4561), which, as heretofore pointed out, authorizes suit to be brought in the name of the Superintendent of Insurance, it would seem that section 5985 of the Revised Statutes 1929 (Mo.St.Ann. § 5985, p. 4560) is the applicable statute. Under its provisions, the superintendent is empowered and authorized to employ legal process to collect delinquent taxes, which when collected he is to pay into the state treasury. Its provisions are not as definite as section 5987, but when considered with other related statutes, it seems clear that the superintendent and not the state is to prosecute the action.

Section 5987, as has been observed, was enacted in 1879. Under its provisions the Superintendent of the Insurance Department was authorized to sue "in his own name in any court in this state having jurisdiction," in cases where the authority of the insurance company had been suspend-

ed, revoked, or withdrawn, or where the company had voluntarily withdrawn from the state. The authority was not sufficiently broad to include all cases in which such a suit might be necessary. In this situation, in 1895 (Laws 1895, p. 198), the Legislature supplemented the section by enacting section 5985. While section 5985 does not in hæc verba provide that the suit must be brought by the superintendent "in his own name," yet considering the purposes of the related statutes and the chronological sequence of their adoption, the conclusion is irresistible that suit under either statute must be brought in the name of the Superintendent of the Insurance Department. Both of these sections refer to the enforcement of the collection of a tax from a company which shall have withdrawn from the state, and certainly neither statute purports to authorize the Superintendent of the Insurance Department to institute suit in the name of the state.

■ A study of the statutes of Missouri leads to the conclusion (1) that the Attorney General is designated as the officer authorized to bring suit in the name of the state; (2) that in the instances in which there is any exception to this rule, the statute specifically names what other officer may bring a suit; (3) where a suit has been brought in the name of the state by any officer other than the Attorney General, or some other officer specifically authorized by statute so to do, the state does not thereby become a party; and (4) the cause of action here alleged is one which belongs to and must be brought by the Superintendent of the Insurance Department.

■ It is urged by plaintiff that even though the statutes contemplate or require that the suit be brought and maintained in the name of the Superintendent of the Insurance Department, still the state is in such relation to that department that it in reality represents the state. Such a situation was recognized by this court in Hertz v. Knudson (C.C.A.8) 6 F.(2d) 812. The state, however, may establish a separate entity which for purposes of litigation must be considered the only party to the action. Louisiana Highway Commission v. Farnsworth (C.C.A.) 74 F.(2d) 910. Certiorari was denied in Louisiana Highway Commission v. Farnsworth, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259.

The Farnsworth Case was based upon a road contract entered into between the State of Louisiana approved by the Louisiana Highway Commission by its chairman and the State Highway Engineer, and the plaintiff. The court's jurisdiction was challenged upon the ground that the state was the actual party defendant. It appeared that the Louisiana Highway Commission was created by the Legislature of Louisiana with the power to sue and be sued. It had a distinct legal entity from the state, and the court held that the commission and not the state was the actual party defendant in the case. The opinion points out the distinction between the case there under consideration and the case of State Highway Commission v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262, relied upon by plaintiff.

In State Highway Commission v. Kansas City Bridge Company, 81 F.(2d) 689, 691, we point out the distinction between the case of Louisiana Highway Commission v. Farnsworth, supra, and State Highway Commission v. Utah Construction Co., supra. In the Utah Construction Company Case, the State Highway Commission was not authorized to sue nor be sued. So, in State Highway Commission v. Kansas City Bridge Company, supra, the State Highway Commission could not sue nor be sued. In commenting upon the distinction between these cases we said: "We think that the true distinction between the case of Louisiana Highway Commission v. Farnsworth, supra, and State Highway Commission of Wyoming v. Utah Construction Co., supra, is that in the former the federal court had jurisdiction not because the state Supreme Court had held that the commission was a legal entity distinct from the state and subject to suit, but because, under the Constitution and laws of Louisiana, it was such a legal entity and a citizen of Louisiana—while in the latter case the highway commission of Wyoming was a mere representative of the state."

■ Under the Missouri laws, the Superintendent of the Insurance Department is, we think, an entity distinct from the state with power to sue and be sued. The state in the instant action has not made itself "an active agent," and has not "assumed responsibilities." Hertz v. Knudson, supra; Lankford v. Platte Iron Works Co., 235 U.S. 461, 35 S.Ct. 173, 59 L.Ed. 316.

The Missouri statutes disclaim responsibility in actions of the character of that here involved. They make the officer, not the state, the active agent. It is he who brings the action. The state pays none of

the expenses and disclaims any responsibility for payment of any of the officer's expenses. Any deficiency of income compared to expenses must be made up by assessment by the superintendent upon insurance companies. When the superintendent has succeeded in making collection, "he shall pay the same into the state treasury," and incidentally it is to be observed he is required to give a bond of $100,000, "conditioned for the faithful discharge of his duty." He sues for and recovers in his own name. Any judgment would be paid to him, and it is not until he collects the judgment that he makes payment to the state treasurer. The state is a beneficiary of only one half of the recovery (section 5980, Rev.St.1929 [Mo.St.Ann. § 5980, p. 4558]), while the other half goes into a county foreign insurance fund ultimately distributed to the credit of counties and cities (section 5982 Rev.St.1929 [Mo.St. Ann. § 5982, p. 4559]).

 The state has divorced itself from the litigation which the Superintendent of the Insurance Department may conduct. Its position is comparable to that of the beneficiary of an express trust whose citizenship has no bearing on the jurisdiction of a federal court, the court not looking beyond the citizenship of the trustee who is the party litigant. Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S. Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904. The mere fact that the state has a beneficial interest in the ultimate recovery does not make it a party. Mecom v. Fitzsimmons Drilling Co., supra; Parks v. Carriere Consolidated School Dist. (C.C.A.5) 12 F. (2d) 37; State Board of Escheats v. Klump (C.C.A.6) 38 F.(2d) 625.

Authorities apparently holding to the contrary are distinguishable. Ferguson v. Ross (C.C.N.Y.) 38 F. 161, 3 L.R.A. 322, the reasoning in which is approved in Missouri, K. & T. Ry. Co. v. Missouri R. R. & Warehouse Commissioners, 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78, was a case where a shore inspector was authorized to sue for a penalty, and in the event of recovery the money went into the state treasury. The District Court held that the state was the real party in interest. but this was for the recovery of a penalty and penalty proceedings are not of a civil nature and hence are not removable. Neither had the statutes involved in that case drawn the line, as they have here, and declared that the state would not be a party to the litigation, any more than the beneficiary of an express trust is a party to the litigation for jurisdictional purposes. As we have before observed, the state may not be sued, neither may suit be brought in its name, without its consent. In Robertson v. Jordan River Lumber Co. (C.C.A.5) 269 F. 606, cited by plaintiff, the state actually owned the land which the officer brought suit to recover. In State Highway Commission v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262, the state was an actual party to the contract in suit. Other cases relied upon are, we think, all distinguishable.

We conclude that the State of Missouri is not a party to the action and its presence on the record as a plaintiff will not defeat the jurisdiction of the federal court (Ex parte State of Nebraska, supra); that diversity of citizenship therefore existed, and the court did not err in denying plaintiff's motion to remand. We pretermit consideration of defendant's contention that the cause of action arose under the Federal Constitution, further than to say that we are not impressed with this contention. Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. ——. We base our decision on the ground of diversity of citizenship.

The judgment appealed from is therefore affirmed.