IKUTA, Circuit Judge,
dissenting:
The majority today purports to overrule longstanding Ninth Circuit precedent that is, quite literally, hornbook law: a party is an interested party for purposes of diversity jurisdiction when it has some control over the litigation. See Wright & Miller, Federal Practice & Procedure § 1556 (3d ed.) (citing Atchison, T. & S.F. Ry. Co. v. Phillips, 176 F. 663 (9th Cir.1910)). Based on this binding precedent, we must dismiss for lack of jurisdiction. I respectfully dissent.
I
The crucial question for jurisdiction in this case is whether the Department of Fair Employment and Housing (DFEH), a California agency, constitutes a party to this action for purposes of diversity jurisdiction. If DFEH is an interested party, then complete diversity is lacking, because DFEH is equivalent to the state and a state cannot be a citizen of itself. See Moor v. Alameda Cnty., 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).
A
The answer to this question is established by long-standing precedent. Federal courts have diversity jurisdiction over controversies “between citizens of different states.” U.S. Const, art. Ill, § 2, cl. 1. As a general rule, when jurisdiction depends on the party, the Court determines jurisdiction based on the party named in the record. Mo., Kan. & Tex. Ry. Co. v. Hickman (hereinafter Missouri Railway), 183 U.S. 53, 54, 22 S.Ct. 18, 46 L.Ed. 78 (1901) (citing Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824)).
Notwithstanding this general rule, under rare circumstances the presence of a non-diverse party on the record will not destroy diversity. In Walden v. Skinner, the Supreme Court explained that although the beneficiary of a trust had named the trust’s executors as defendants in an action to obtain title to trust property, the executors’ citizenship did not count for determining diversity jurisdiction because they had no “interest in or control over” the lawsuit and their only role “was to perform *750 the ministerial act of conveying the title if adjudged to the complainant.” 101 U.S. 577, 589, 25 L.Ed. 963 (1894). And in Ex parte Nebraska, the Court reaffirmed that “the mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no real interest in the controversy.” 209 U.S. 436, 444, 28 S.Ct. 581, 52 L.Ed. 876 (1908).
Although the majority relies heavily on Missouri Railway, that case addressed a different issue: whether the state of Missouri was a real party in interest despite not being a party of record. 183 U.S. at 58, 22 S.Ct. 18. The Court noted that even when a state is not a named party, the state may still be a real party in interest “when the relief sought is that which inures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate.” Id. at 59, 22 S.Ct. 18. Nevertheless, the Court held that this exception was inapplicable in the case before it, because the state did not have any “direct, pecuniary interest in the result of the litigation,” and the state’s general interest in “the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws,” was too remote. Id. at 60, 22 S.Ct. 18.
The Court further clarified its test for determining when a party of record is a real party for jurisdictional purposes in United States Fidelity & Guaranty Company v. United States, 204 U.S. 349, 27 S.Ct. 381, 51 L.Ed. 516 (1907). In that case, a material man[1] employed on a federal construction project brought an action to recover on a payment bond, pursuant to a statute that required the material man to bring suit in the name of the United States. Id. at 354, 27 S.Ct. 381. The defendant challenged federal jurisdiction on the ground that the United States was a nominal party and there was no other basis for federal jurisdiction. Id. The Court disagreed, holding that the United States was not “merely [a]nominal or formal party” even though only the persons who supplied labor or materials “will get the benefit of the judgment” because the United States was a party to the underlying construction contract and had an interest in enforcing the contract on behalf of the material man. Id. at 356-57, 27 S.Ct. 381. In short, even though the United States received no immediate monetary benefit from the suit, it was a party to the case for jurisdictional purposes.
B
From these Supreme Court cases and others, we distilled our own approach. See Atchison, 176 F. 663. In Atchison, we considered a wrongful death action brought by a surviving spouse against a railway company. Id. at 664-65. In order to establish that she was the sole beneficiary of her husband’s estate, the plaintiff named her husband’s parents as defendants. Id. at 665. The railway company claimed that the federal court lacked jurisdiction, because the parents and spouse were citizens of the same state. Id. at 666.
In determining whether the parents’ citizenship counted for diversity jurisdiction purposes, we stated that under Supreme Court precedents, the key question was whether the parties have “a real interest in the cause.” Id. at 667. But we further noted that for “[a] party to be ‘interested’ in an action,” it “need not be one who may gain or lose something therein.” Id. Rather, “[t]he word has a broad meaning, and includes all those who as parties have some control over the action, whether they will be personally affected thereby or not.” *751 Id. Because control over the action is significant, we noted that “an administrator, a trustee, or an executor is a real party in interest when he is bringing or defending a suit for the estate which he represents” because “[s]uch a party brings or defends the suit — employs counsel — and is directly responsible for going on with the litigation.” Id. (citing Chappedelaine v. Dechenaux, 8 U.S. (4 Cranch) 306, 2 L.Ed. 629 (1808)). Because the parents of the decedent in Atchison had neither an interest in the controversy nor any control over it, we held that they were nominal parties, and their citizenship did not count for determining diversity. Id.
Atchison thus made clear that either control of the case or a tangible interest in it suffices to make the citizenship of a party of record count for diversity purposes. Simply put, parties may have a “real interest” in a case if they have “some control over the action, whether they will be personally affected thereby or not.” Id. at 667. This rule is not contrary to Missouri Railway. While that case concluded that the state’s complete lack of interest in litigation was evidence that it was not a real party, it did not establish the opposite rule, namely, that obtaining a tangible benefit is necessary in order for a state to be a real party in interest. See 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78; see also U.S. Fid. & Guar. Co., 204 U.S. at 356-57, 27 S.Ct. 381. Because no subsequent decision of this court has cast any doubt on the Atchison rule, we are bound by it. See Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir.2001) (“If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect.”).
The majority concedes that California “arguably” controls the litigation, but relies on Missouri Railway for the proposition that “control alone cannot render California a real party in interest because a state can always bestow upon itself control over virtually any lawsuit via legislation.” Maj. op. at 738 n.4. The majority does not quote any language from Missouri Railway that supports this proposition. Nor could it, because in fact Missouri Railway provides no support for the majority’s newly invented rule. Indeed, Missouri Railway does not even address the situation present in this case, where a state not only is a named party, but actually controls the litigation.
By contrast, Atchison enunciated a rule that is directly on point here: a party to an action “includes all those who as parties have some control over the action, whether they will be personally affected thereby or not.” 176 F. at 667. In reaching this conclusion, Atchison did not suggest that this rule would apply only to private parties, not to the government. Rather, Atchison explained that Fidelity, “an action brought in the name of the United States for the benefit of materialmen and laborers on bonds given in pursuance of certain acts of Congress,” stood for the “principle” that “the parties whose citizenship is important are those who have a tangible interest in the controversy or exercise some control over it.” Id. at 668 (emphases added). Given that Missouri Railway is not on point, while Atchison is directly applicable, the majority’s circumvention of our long-standing rule is inexplicable.
C
In this case, DFEH is the party of record. Moreover, DFEH is the party that brought the suit and is also in control of the litigation. Indeed, the majority does not dispute that this is DFEH’s litigation; it holds that Carauddo had no right of intervention, see Maj. op. at 740- *752 41, and that the district court did not abuse its discretion in placing various limitations on Carauddo as an intervenor, see Maj. op. at 741-42. In light of the rule enunciated in Atchison that a party has a “real interest” in the controversy if it has “some control over the action,” whether the party “will be personally affected thereby or not,” 176 F. at 667, DFEH’s complete control over the litigation is sufficient to make DFEH a real party for jurisdiction purposes. Accordingly, the majority errs in suggesting that obtaining benefits from the litigation is a sine qua non of being a real party.
Finally, although DFEH would obtain no monetary benefit from the litigation, I would conclude that DFEH’s role in enforcing anti-discrimination laws gives it a sufficiently substantial interest for diversity jurisdiction purposes. The California Fair Employment and Housing Act (FEHA) authorizes DFEH to bring suit in the name of California to “provide effective remedies that will both prevent and deter unlawful employment practices,” Cal. Gov’t Code § 12920.5 (citing Cal. Const, art. XIV, § 1; Cal. Gov’t Code §§ 12930(h), 12965), including injunctive measures such as training and policy changes, see id. §§ 12965(c)(3), 12970. Specifically, upon a finding of discrimination or harassment, DFEH’s practice is to order the offending employer to “cease and desist the [discriminatory] practice, report the manner of compliance, and take other remedial action as appropriate.” Peralta Cmty. Coll. Dist. v. Fair Emp’t & Hous. Comm’n, 52 Cal.3d 40, 276 Cal.Rptr. 114, 801 P.2d 357, 365 (1990) (citing Cal. Gov’t Code § 12973). In light of the FEHA’s broad remedial purpose, see Cal. Gov’t Code § 12920 (noting that employment discrimination “foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employers, and the public in general”), the California Supreme Court has characterized this procedure as serving “the statutory purpose of providing effective remedies that will eliminate the discriminatory practice and prevent its recurrence, not just as to the immediate victim, but as to all employees present and future,” Peralta, 276 Cal.Rptr. 114, 801 P.2d at 365 (citing Cal. Gov’t Code § 12920). DFEH’s specific statutory responsibility to further a well-defined state interest in remedying discrimination is far removed from the general interest in good government that the Court held was insufficient to constitute an interest in the result of litigation in Missouri Railway.
That such an interest is sufficient to give DFEH an interest in the lawsuit for diversity purposes is suggested by the Supreme Court’s standing doctrine. As in the context of determining if a party is a real party or merely a nominal party for diversity purposes, the Supreme Court has likewise distinguished between real and nominal parties for standing purposes. In this regard, the Supreme Court has indicated, a state has standing when it raises claims that implicate “its sovereign or quasi-sovereign interests,” Pennsylvania v. New Jersey, 426 U.S. 660, 665, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976), and lacks “standing under the parens patria;e doctrine” when it “is only a nominal party without a real interest in its own,” Alfred L. Snapp & Son v. Puerto Rico, 458 U.S. 592, 600, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). Because California’s interest in vindicating its citizens’ rights to a discrimination-free workplace is one that it has “attempt[ed] to address through its sovereign lawmaking powers,” id. at 609, 102 S.Ct. 3260, California has parens patriae standing to pursue relief for Carauddo. Just as DFEH’s interest in the litigation is sufficient to make it a real party for standing *753 purposes, its interest is likewise sufficient to make it a real party for purposes of diversity jurisdiction.
II
In sum, DFEH is in control of the lawsuit which it is bringing pursuant to a strong state interest in vindicating the state’s non-discrimination policies. Cf. U.S. Fid. & Guar. Co., 204 U.S. 349, 27 S.Ct. 381 (holding that the federal government’s interest in vindicating the rights of third parties can constitute a pertinent interest in a lawsuit). Under the rule enunciated in Atchison, this is more than sufficient to make DFEH a party whose citizenship counts for diversity purposes. Because the parties are not completely diverse, we lack jurisdiction. Therefore, I dissent.

. A material man is the person who supplies materials required for a construction project.