ORDER RE MOTION TO REMAND
JAMES DONATO, United States District Judge *1178 This case was originally filed in Alameda Superior Court, and alleges a campaign of kickbacks and other inducements by defendant AbbVie Inc. to inflate sales of its Humira drug, which is used to treat autoimmune disorders such as arthritis and colitis. See Dkt. No. 1-1.[1] The complaint is based on AbbVie's conduct in California with California patients and California healthcare providers. Plaintiffs are the State of California, by and through the California Insurance Commissioner ("Commissioner"), and relator-plaintiff Lazaro Suarez. The complaint states a single claim under the California Insurance Frauds Prevention Act, which prohibits the use of "runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits" covered by insurance. Cal. Ins. Code § 1871.7(a) ("IFPA").
AbbVie removed the case to this Court on the argument that it has complete diversity with Suarez and that the State of California should be disregarded as a nominal party for jurisdictional purposes. Dkt. No. 1 at 2-3. Plaintiffs now ask for the matter to be remanded to state court. Dkt. No. 47. The Court finds that the State of California is a real party in interest and that the case was removed improvidently and without jurisdiction. It is remanded to the Superior Court. 28 U.S.C. § 1447(c).
BACKGROUND
AbbVie is a biopharmaceutical company incorporated in Delaware and headquartered in Chicago, Illinois. Dkt. No. 1-1 ¶ 31. Suarez is a registered nurse and former AbbVie employee, and has sued as a whistleblower based on his experiences as a "nurse educator" and "patient ambassador" with the company. Id. ¶ 23. Suarez lives in Florida and alleges that he helped train AbbVie personnel in California. Id.
The other scheme took the form of AbbVie's "Ambassador Program," which was a network of nurses AbbVie made available at no cost to healthcare providers who prescribed Humira for their patients. Id. ¶¶ 48-49. A central theme of the complaint is that AbbVie used the Ambassador Program to start and keep patients on Humira *1179 under the guise of providing skilled nursing services to them. The "ambassadors" would develop relationships with doctors and patients to increase sales of Humira by handling insurance authorizations and claims, appealing denials of coverage by insurers, guiding patients to enroll in insurance plans that paid for Humira, and other tactics to ensure coverage of Humira prescriptions for commercially insured patients. Id. ¶¶ 52-81. Plaintiffs contend that the Ambassador Program was "wildly successful" and "dramatically increased the number of prescriptions for Humira that are filled and refilled" in California. Id. ¶¶ 54, 61.
Plaintiffs say that these illicit sales practices were particularly pernicious because Humira is an expensive drug with serious potential health hazards. The complaint alleges that Humira is subject to a "boxed warning" condition, which requires AbbVie to state in a bold-print box that Humira is associated with "serious infections and malignancies" such as tuberculosis and T-cell lymphoma. Id. ¶¶ 4, 46. The complaint also alleges that AbbVie made over $12 billion in Humira sales in 2017 alone. Id. ¶ 44. With respect to California, it alleges that insurers paid approximately $1,290,000,000 to cover 274,000 claims for Humira prescriptions by California patients between 2013 and 2018. Id. ¶ 45.
On the basis of these and other factual allegations, the State of California and Suarez have brought a single claim against AbbVie for insurance fraud under the IFPA. Section 1871.7 of the IFPA makes it unlawful to use "runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits ... under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer." Cal. Ins. Code § 1871.7(a). Violations are subject to a "civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim" paid by an insurer. Id. § 1871.7(b). Equitable and injunctive relief may also be ordered. Id.
The IFPA authorizes the Commissioner to bring an action. Id. § 1871.7(d). It also allows for an "interested person" to bring a qui tam action "for the person and for the State of California" and "in the name of the State." Id. § 1871.7(e)(1). If a qui tam case is initiated, the Commissioner may intervene to assume the prosecution of the action. Id. § 1871.7(e)(4)(A).
That is what happened here. The State of California exercised its right to intervene by and through the Commissioner. Dkt. No. 1-1 ¶¶ 8-10. Suarez is staying on as a relator-plaintiff, but the Commissioner has "primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." Cal. Ins. Code § 1871.7(f)(1).
The IFPA provides for an allocation of the civil penalties and assessments plaintiffs recover if they prevail in court or settle favorably with AbbVie. Id. § 1871.7(g)(1)(A)(iii). Relator Suarez is entitled to reasonable attorney's fees and costs, and up to 40% of the monetary recovery. Id. § 1871.7(g)(1)(A)(iii)(I), (IV). The Commissioner also gets attorney's fees and costs, and at least 60% of the monetary recovery, and possibly more depending on the allocation to the relator. Id. § 1871.7(g)(1)(A)(iii)(II), (IV). The money allocated to the Commissioner must be paid to the General Fund of the State of California and used to fund fraud investigations and prevention efforts by the California Department of Justice and Department of Insurance. Id. § 1871.7(g)(1)(A)(iv).
*1180 DISCUSSION
I. LEGAL STANDARD
Diversity jurisdiction arises when a plaintiff sues a citizen of a different state over an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). An out-of-state defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Id. § 1441(a). A plaintiff may move to remand the action to state court if the case was improperly removed because of a lack of subject matter jurisdiction. Id. § 1447(c).
There is a strong presumption against removal, and the removal statute is strictly construed against finding federal jurisdiction. Gaus v. Miles, Inc. , 980 F.2d 564, 566 (9th Cir. 1992). Principles of federalism, comity, and respect for the state courts also counsel strongly in favor of scrupulously confining removal jurisdiction to the precise limits that Congress has defined. Shamrock Oil & Gas Corp. v. Sheets , 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). The defendant always "bears the burden of overcoming the 'strong presumption against removal jurisdiction.' " Hansen v. Grp. Health Coop. , 902 F.3d 1051, 1057 (9th Cir. 2018) (quoting Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka , 599 F.3d 1102, 1107 (9th Cir. 2010) ). Any doubt about removal weighs in favor of remand. Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A. , 761 F.3d 1027, 1034 (9th Cir. 2014).
The parties rely heavily on cases under the federal False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA"), to address the question of California's party status. But the IFPA and FCA are different statutes. One of the differences is that the goal of the FCA is to recover funds fraudulently obtained directly from the government. In FCA cases, the government itself is the direct, and only, victim. In contrast, the direct victims under the IFPA are the insurers who pay out on fraudulent claims or coverage, and the insureds who pay inflated premiums to cover the cost of the fraud. See People ex rel. Allstate Ins. Co. v. Weitzman , 107 Cal. App. 4th 534, 561-62, 132 Cal.Rptr.2d 165 (2003). Consequently, the FCA cases are of only approximate help in resolving the issue of jurisdiction here.
The better approach to determining California's stake in this case is to understand its role under the plain language of the IFPA. State law determines the "interest California has in this litigation pursuant to its laws." Lucent , 642 F.3d at 738. If the IFPA establishes a " 'substantial state interest' separate and distinct from the relief sought on behalf of the individual," then California is the real party in interest. Nevada v. Bank of Am. Corp. , 672 F.3d 661, 670 (9th Cir. 2012) (quoting Lucent , 642 F.3d at 739 )).
*1181 The text of the IFPA leaves no doubt that California has a well-defined and tangible interest in eliminating insurance fraud that makes it a real party in this case and not a mere bystander. As the California Court of Appeal has recounted, the IFPA was enacted in 1993 to combat fraudulent claims on the state workers' compensation system. Weitzman , 107 Cal. App. 4th at 547, 132 Cal.Rptr.2d 165. Subsequent amendments expanded the scope of the IFPA to cover insurance fraud in any domain where it might occur. Id. at 548-49, 132 Cal.Rptr.2d 165. This includes health insurance fraud. Cal. Ins. Code § 1871(h). The State of California has previously pursued IFPA claims against drug manufacturers such as Bristol-Myers Squibb Co. for using kickbacks and other practices to inflate prescriptions, much like the conduct AbbVie is sued for here. State ex rel. Wilson v. Super. Ct. , 227 Cal. App. 4th 579, 586-87, 174 Cal.Rptr.3d 317 (2014).
Whistleblowers are a key component in effecting the purposes of the IFPA. They are essential for providing the inside evidence of insurance fraud that the government typically would not be able to access or act on. Id. at 596-97, 174 Cal.Rptr.3d 317. The IFPA invites whistleblowers to step forward "with information uniquely in their possession and to thus aid the Government in [ferreting] out fraud." Id. at 596 n.18, 174 Cal.Rptr.3d 317 (internal quotation omitted); see also People ex. rel. Strathmann v. Acacia Research Corp. , 210 Cal. App. 4th 487, 502, 148 Cal.Rptr.3d 361 (2012).
California's interest in defeating insurance fraud is substantial in that fraudulent claims can impose extraordinary costs on insurers and insureds through wrongful conduct that is largely hidden from plain view. See, e.g. , Cal. Ins. Code § 1871(h) (legislative finding of "billions of dollars annually" in costs from health insurance fraud); Weitzman , 107 Cal. App. 4th at 548, 132 Cal.Rptr.2d 165. California's interest is immediate and tangible because the state stands to recover significant amounts of money in civil penalties and assessments that are expressly earmarked by the IFPA for use in government insurance fraud investigations. Cal. Ins. Code § 1871.7(g)(1)(A)(iv). This allows California to "fight insurance fraud, without creating expensive new bureaucracies and breaking the bank." Weitzman , 107 Cal. App. 4th at 548, 132 Cal.Rptr.2d 165 ; see also Strathmann , 210 Cal. App. 4th at 504, 148 Cal.Rptr.3d 361.
This case effectuates the IFPA's goals. It is an enforcement action by the State of California against a drug manufacturer that is alleged to have engaged in pervasive insurance fraud in California through illicit schemes intended to generate insurance claims and coverage for Humira prescriptions. If California prevails on the merits, it stands to recover from AbbVie tens of millions of dollars, or more, in civil penalties and potentially trebled claim-based assessments, along with attorney's fees and costs.
AbbVie does not present any good reason to marginalize the State of California as a nominal player. It relies heavily on Lucent and Missouri Railway , a Supreme Court case of an older vintage, for the proposition that "general government interests" in protecting the health and welfare of its citizens are not substantial enough to make a state a real party in interest for diversity jurisdiction purposes. See Dkt. No. 1 at 7-11; Dkt. No. 55 at 8-9; Mo., Kan. & Tex. Ry. Co. of Kansas v. Hickman , 183 U.S. 53, 60, 22 S.Ct. 18, 46 L.Ed. 78 (1901) (" Missouri Railway "); Lucent , 642 F.3d at 738-39. That is without a doubt true, but AbbVie fails to account for the plain language of the IFPA and the specific and tangible state interests it embodies, which are far removed from a general concern about good government that was found to be insufficient for jurisdiction in other cases. AbbVie's reliance on Missouri Railway is further misplaced in light of the fact that, unlike here, the State of Missouri was not a party of record and had no tangible stake in the outcome of the case. Missouri Railway , 183 U.S. at 61, 22 S.Ct. 18.
Lucent is even farther afield in that it involved a claim for employment discrimination by a single individual under the California Fair Employment and Housing Act ("FEHA"). Lucent , 642 F.3d at 735-36. Although the state Department of Fair Employment and Housing filed the case on behalf of the individual, our circuit held that the FEHA expressed only a general governmental interest in fair employment and that all the meaningful relief available in court would go to the individual, not the state. Id. at 738-39. As the prior discussion demonstrates, neither condition is present in this IFPA action.
AbbVie's other arguments are equally unavailing. It points to Bates v. Mortgage Electronic Registration System, Inc. , 694 F.3d 1076 (9th Cir. 2012), to say that the state is not necessarily the real party in interest in every qui tam action. Dkt. No. 55 at 3. Maybe so, but this case is brought under the California IFPA, which is different from the federal or state FCA, and in any event the Bates relator filed a complaint on behalf of "the Counties" of California, not the state itself. Bates , 694 F.3d at 1080.
AbbVie's emphasis on an unpublished memorandum in California ex rel. TIG Insurance Co. v. Culpepper , 720 F. App'x 884 (9th Cir. 2018), is particularly questionable. See Dkt. No. 55 at 1, 6. In that case, an insurance company sued the defendant in state court under the IFPA for *1183 fraudulently obtaining a workers' compensation award. The defendant removed the action on diversity jurisdiction to federal district court. Culpepper , 720 F. App'x at 884. The memorandum addressed a possible bar to the district court proceedings under the California Labor Code, and concluded that the code did not block the IFPA. Id. at 884-85. Neither removal nor diversity jurisdiction were challenged in the appeal, and the State of California was not a direct participant in the case.
AbbVie says " Culpepper confirms that federal courts can exercise diversity jurisdiction in IFPA cases" and that the same should be true here. Dkt. No. 55 at 6. The contention is unpersuasive for two reasons. To start, even if it were accepted without question that diversity jurisdiction with respect to the IFPA "can" be found, nothing in Culpepper says it "must" be found, particularly in the factual circumstances here where the State of California is a named plaintiff with a substantial interest at stake and control of the litigation.
More problematically for AbbVie, its interpretation of Culpepper is not based on anything actually said in the memorandum. Instead, AbbVie relies on what the circuit panel did not say or do. Since the circuit panel did not address diversity or dismiss the case sua sponte for lack of jurisdiction, AbbVie posits that it must have affirmatively found that diversity jurisdiction was proper. Id. In effect, AbbVie interprets the negative space in Culpepper to signal that diversity jurisdiction is proper over IFPA actions irrespective of the role of the state.
Finding judicial holdings in the ether is more spiritualism than sound legal argument. Common sense advises that Culpepper did not address diversity jurisdiction because the parties never said a word about it. Subsequent developments in the litigation validate this obvious explanation. Several months after the appeal, the Culpepper parties jointly filed a stipulation to remand the case to state court. California ex rel. TIG Ins. Co. v. Culpepper , No. 8:16-cv-01555-CJC-JCG (C.D. Cal. Feb. 6, 2019), Dkt. No. 40. The parties acknowledged that "[a]t the time of removal, the parties were unaware of legal authority establishing that the Court lacks jurisdiction" in light of the state's interest in an IFPA action. Id. at 2. The district court immediately remanded the case to the Superior Court. Id. , Dkt. No. 41. This course of events puts to rest any possible theory that Culpepper stands for a stealth approval of diversity jurisdiction here.
AbbVie's suggestion that the state is not really a party here because it is acting through the Commissioner is also untenable. The state is the named plaintiff; it holds the interests conferred by the IFPA and will hold any monetary recovery that is awarded. The Commissioner is the state's living and breathing representative for the practical purpose of handling the litigation. See Cal. Ins. Code § 1871.7(e)(1). AbbVie does not cite any meaningful authority to indicate that this arrangement in any way negates the state's role in this case.
As a closing observation, AbbVie's complaints about how Suarez participated in similar proceedings in another court are of no consequence. Suarez is perfectly free to choose a litigation forum, Hansen , 902 F.3d at 1056, and AbbVie has not proffered any evidence of untoward gamesmanship or abusive litigation tactics. Even if it had, which is not the case, diversity jurisdiction is not granted as a sanction against an allegedly wayward party.
CONCLUSION
This action was removed improvidently and without jurisdiction, and is remanded *1184 to the Superior Court of California for the County of Alameda. 28 U.S.C. § 1447(c).
IT IS SO ORDERED.
This version of the complaint is the redacted copy attached to the removal petition. It will be used here. The Court will resolve a motion to seal for the complaint and other materials, Dkt. No. 57, in a separate order.