Herbert KAUFMAN and L. W. Transfer, Inc., a corporation, Plaintiffs-Respondents,

v.

Harvey HENRY and Righter Trucking Company, Inc., a corporation, Defendants-Appellants.

No. 36026.

Missouri Court of Appeals, St. Louis District, Division Three.

Feb. 25, 1975.

Rader, Smith & Calvin, Edward E. Calvin, Cape Girardeau, for defendants-appellants.

Limbaugh, Limbaugh & Russell, Cape Girardeau, for plaintiffs-respondents.

McMILLIAN, Judge.

Defendants appeal from the judgment below rescinding a contract of sale between the parties on grounds of fraud and deception. The contract transferred the assets of plaintiff L. W. Transfer, Inc., a Missouri corporation, to defendants Henry and the Righter Trucking Company. L. W. Transfer's board of directors purportedly made or ratified the sale. We affirm the judgment of the trial court.

L. W. Transfer was a commercial carrier whose only assets were operating authorities from regulatory agencies and trucking equipment. At the time of the contested contract of sale, the directors and officers of the corporation were: plaintiff Kaufman, president; George Fischer, vice-president; Wilbert Enke, secretary-treasurer; and Oscar Bellman and Rudy Reimann. Kaufman and Enke managed the daily affairs of the corporation and from 1964 to 1972, Dillman Ruehling worked as company accountant. The corporation's 194 shares of outstanding stock were distributed as follows: Kaufman, 65 shares; Fischer, 40 shares; Enke, 43 shares; Bellman, 20 shares; Reimann, 5 shares; Ruehling, 10 shares and other minor stockholders, 21 shares.

Negotiations for the sale apparently opened on April 17, 1973, when defendant Henry met with Fischer, Enke, Ruehling and Reimann, and offered $10,000 for L. W. Transfer's total assets. This gathering was neither a board of director's nor a stockholders' meeting. Kaufman was not present because he was then hospitalized. When Fischer told him of the offer later, Kaufman responded, "George, whatever you do, please don't sell the thing for that price, because we worked too hard for it and sweated blood for it."

On April 30, 1973, a purported board meeting was held to consider the Henry offer. No written notice of the meeting was given to the board members or to the stockholders. Neither a majority of the board nor a majority of the stockholders attended. Only Fischer, Bellman and Ruehling were present, representing 70 of the 194 shares of outstanding L. W. Transfer stock, and Bellman and Ruehling attended only because of a telephone request from Fischer. At this meeting, Fischer was authorized to make a purchase and sale agreement of the corporation's assets to defendant Righter Trucking Company for $14,500 on or about May 2, 1973. After the meeting and prior to signing the sale contract on May 2, Fischer did not in-

form any of the remaining shareholders or directors of the sale. Further, he did not inform these persons of the sale at any time during the month of May.

Recognizing the infirmities of the April 30 meeting, Fischer subsequently called a meeting of the directors and shareholders for June 21. The purpose of this meeting was to seek ratification of the action taken in the April 30 meeting.

Notice of the June 21 meeting was sent out over Fischer's signature as acting secretary and recited: defendant Henry's offer; an offer at a higher figure from other persons; and acknowledgment that the board erred by not notifying the shareholders of the impending sale to Henry; and an incantation to be present. Nothing in the notice specifically asked for a ratification of the April 30 meeting.

All of the shareholders attended the June 21 meeting either in person or by proxies. Similarly all members of the board attended, except for plaintiff Kaufman who was represented by proxy. The vote on the question whether to ratify the April 30 authorization to sell the assets of the corporation to defendants was seventy-four (74) shares "For" and sixty-two (62) shares "Against."

Defendants' first assignment of error is that plaintiff Kaufman is not the real party in interest in this lawsuit because under Rule 52.01, V.A.M.R., he has contracted to sell his stock and other stock pledged to him by certain shareholders. Defendants' claim is based on an agreement made by Kaufman and third persons, not parties to this suit, for the purchase of all L. W. Transfer stock owned by or pledged to Kaufman. The purchase, for $25,000, is contingent upon Kaufman's promise to deliver at least 85 percent of the total outstanding shares of L. W. Transfer, and upon the recission of the sale contract with defendants. Kaufman had already entered into a pledge agreement with Enke, Bellman, their spouses, and Fischer whereby these persons had agreed to cooperate with Kaufman's effort to have the sale to de-

fendants rescinded. In exchange, Kaufman agreed that if the sale were rescinded, he would pay all of the corporation's debts and distribute the remainder of the $25,000 purchase price to the shareholders. The third parties have already paid the $25,000 purchase price into an escrow account. Under the terms of the sale agreement and the pledge agreement, both would be null and void if the sale to defendants were not rescinded.

█ The purpose of the real party in interest rule is to enable those who are directly interested in the subject matter of litigation and entitled to reap its fruits, be the ones to maintain the action, Holt v. Myers, 494 S.W.2d 430, 435 (Mo.App. 1973); Smith v. Cowen, 350 S.W.2d 96, 98 (Mo.App.1961). In Hribernik v. Reorganized School District R–3, 276 S.W.2d 596, 598 (Mo.App.1955), we stated that a test to determine whether or not an individual is a proper party to a suit is whether he has "some actual and justiciable interest susceptible of protection by that suit . . . ." In Hayes v. Jenkins, 337 S.W. 2d 259, 261 (Mo.App.1960), we held that if a plaintiff, absent an assignment, had bare legal title to the subject matter of a cause of action, he is a real party in interest.

█ In this case, Kaufman has made no assignment. He has a direct financial interest in the litigation because, if the sale to defendants is not rescinded, neither he nor the pledging shareholders will receive anything from the later sale contract between Kaufman and third persons. If the sale to defendants is rescinded, on the other hand, Kaufman stands to reap the benefits of the litigation in that he will receive his portion of the $25,000 purchase price in the later sale contract. We therefore find that Kaufman is a real party in interest in this litigation.

The substantive questions on this appeal concern the purported sale of L. W. Transfer's assets to defendants. Defendants claim that the vote of the shareholders and directors at the June 21 meeting was sufficient to ratify the admittedly defective au-

thorization of the sale given at the April 30 meeting of the directors. Since only a simple majority of the shareholders voted to approve the sale at the June 21 meeting, the question here is whether a simple majority can ratify what a simple majority could not authorize in the first place. We think not.

 It is obvious that actions taken by some members of the board of L. W. Transfer on April 30 did not comply with § 351.400, RSMo 1969, governing the sale of substantially all of the property and assets of a corporation. The board did not adopt a resolution to the shareholders recommending the sale. Statutory notice procedures were not followed. The sale itself was not authorized by the affirmative vote of the holders of at least three-fourths of the outstanding stock in the corporation. What did happen was that a minority of the shareholders purported to sell the corporation's assets in direct violation of § 351.400. In Shell v. Conrad, 153 S.W.2d 384 (Mo.App.1941), the court held that where the evidence shows an utter failure to comply with the statutory provisions governing a sale of the assets of a corporation, the pretended transfer was void and a nullity.

Turning to the June 21 meeting where the April 30 sale was allegedly ratified, we find further disregard of the provisions of § 351.400. Passing over the questions whether a void sale can even be ratified, or whether statutory provisions regarding notice and the manner of voting were followed, the evidence clearly shows that the sale was not approved by the holders of three-fourths of the outstanding stock. Only 74 shares were voted "For" the proposition, versus 62 "Against". Even if we were to accept defendants' contention that only 120 shares were outstanding (a position contrary to the trial court's findings), a 74 share vote "For" the sale still fails to authorize a sale under statute.

We do not accept defendants' unstated but implied argument that a simple majority of the shareholders can ratify what the simple majority could not authorize in the first place, and thus evade the three-fourths requirement of the statute. A ratification must be accomplished in the same manner that would be required to order an action beforehand. State ex rel. Schroeder v. Perkins, 90 Mo.App. 603, 610 (1901). We rule that the trial court did not err in rescinding the contract of sale of L. W. Transfer's assets to defendants.

We have considered defendants other allegations of error and find them without merit. The judgment of the trial court is affirmed.

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.