STATE OF MISSOURI, ex rel., William L. WEBSTER, Attorney General, Plaintiff,

v.

FREEDOM FINANCIAL CORPORATION and Ascension Resorts, Ltd., Defendants.

No. 89–3255–CV–S–2.

United States District Court, W.D. Missouri, S.D.

Sept. 15, 1989.

William M. Van Hook, Missouri Atty. Gen. Office, Springfield, Mo., for plaintiff.

Edward R. Spalty, Armstrong, Teasdale, Schlafly, Davis & Dicus, Kansas City, Mo., for defendants.

## ORDER

COLLINSON, Senior District Judge.

The instant case, removed by defendants from Stone County Circuit Court, has to do with the plaintiff's attempt to apply the Missouri Merchandizing Purchasing Act ("Act") to the defendants in an effort to address certain alleged misconduct. Defendant Freedom Financial Corporation ("Freedom") is a Texas corporation doing business in Missouri selling time-shares. Defendant Ascension Resorts, Ltd. (Ascension) is a limited partnership created the day before the plaintiff filed its suit against defendant Freedom in Stone County. The same day Ascension was created, Freedom conveyed to it all of its Missouri property. Just who the plaintiff is, is the subject of this order.

## I. FACTS

The plaintiff brought suit in Stone County Circuit Court against the defendant Freedom Financial on June 1, 1989, applying for a temporary restraining order, the appointment of a temporary receiver, preliminary and permanent injunctions, the appointment of a permanent receiver, and other court orders. After plaintiff learned of the creation of the limited partnership, it filed an amended petition on or about June 5, 1989. The defendants filed their notice and petition for removal in this Court on June 30, 1989. On July 7, 1989, the plaintiff filed its motion to remand which will be addressed in today's order.

Plaintiff's petition and amended petition were both instituted pursuant to Chapter 407 R.S.Mo. (1986). Plaintiff alleges numerous acts of deception, fraud, false pretenses, false promises, unfair selling practices, misrepresentations, and the suppression and omission of facts by defendants upon private persons. Furthermore, plaintiff brings this action to recover sums to pay damages incurred by individual consumers allegedly defrauded by defendants. The petition prays for equitable relief enjoining defendants from certain acts as alleged in plaintiff's amended petition as well as the appointment of a receiver to liquidate the defendants' assets in order to pay the alleged damages of individual consumers; civil penalties; the state's expenses and costs herein; and restitution to any consumer harmed by the defendants' acts alleged in plaintiff's amended petition. The plaintiff alleges twenty-nine (29) separate violations of the Missouri Merchandiz-

ing Practices Act by defendant Freedom Financial Corporation.

## II.

The parties agree with the Court that the right to remove a case to federal court is controlled wholly by federal statute and that the applicable removal statutes are and should be given strict construction in favor of the jurisdiction of the state court. *Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

Generally speaking, in order for a suit to be removable to federal court, there would have to have been jurisdiction there had the suit been brought in federal court originally. 28 U.S.C. § 1441(a) provides, in part, as follows:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have *original jurisdiction*, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. (Emphasis added)

Defendant predicates this Court's jurisdiction, in the petition for removal, upon 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship).

■ *Federal question jurisdiction.* Federal questions in removal cases must be disclosed upon the face of the plaintiff's complaint. "Most importantly, the federal question must appear as an essential element of the plaintiff's complaint in state court. If the federal question arises only as a defense, or in anticipation of a defense, removal jurisdiction will not exist." *PAAC v. Rizzo*, 502 F.2d 306, 313 (3rd Cir.1974). "[N]either party can take [a] case to federal court where defendant sets up federal law as a defense to a non-federal claim by plaintiff." Wright, *Law of Federal Courts* (2d ed.1970) at 131.

In the instant case, the plaintiff's complaint, as filed in Circuit Court, alleged no federal cause of action, relied upon no fed-eral statute, and raised no federal issues. An examination of the complaint causes this court to conclude that the plaintiff confined its allegations to violations of Missouri's Merchandizing Practicing Act.

In their answer, the defendants have raised certain federal constitutional claims as defenses to the complaint. However, as set out above, the anticipated raising of certain federal issues as *defenses* to the state law claim is not enough to properly invoke this Court's jurisdiction.

■ As the complaining question merely alleges violations of *state* law and any constitutional issues may arise only by way of defense to the plaintiff's allegations, removal is improper pursuant to 28 U.S.C. § 1331.

*Diversity of Citizenship.* Defendants argue in the alternative that diversity jurisdiction exists between the parties. 28 U.S.C. § 1332. The plaintiff argues that such diversity does not exist because the State of Missouri is the actual party plaintiff and therefore not a citizen for diversity purposes.

> A State is not a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States; and that the Circuit Court of the United States has no jurisdiction of it, unless it arises under the Constitution, laws or treaties of the United States.

*Highway Commission of Wyoming v. Utah Construction Co.*, 278 U.S. 194, 200, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929), *quoting Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). On the other hand, in cases where a state is only a nominal party to an action, the Court should look to who is the actual party plaintiff since the mere presence of the state as a nominal party plaintiff will not defeat diversity jurisdiction in federal courts. *Missouri, Kansas and Texas Railway Co. v. Missouri Railroad and Warehouse Commissioners*, 183 U.S. 53, 58–59, 22 S.Ct. 18, 20, 46 L.Ed. 78 (1901). Thus, in the case at bar the central issue becomes whether or not the State of

Missouri is the real party in interest in this matter. If it is, no diversity exists and, since federal question jurisdiction has been found not to exist, this matter would have to be remanded to state court. On the other hand, if the State is merely a nominal party then this Court could have diversity jurisdiction if there were total diversity between the defendants and all of the "real plaintiffs."

### III.

The Court finds as a matter of law that the Missouri Attorney General is, for the purposes of the statute in question, the alter ego of the State of Missouri. Thus, the disputed issue before the Court is not whether the Attorney General is the alter ego of the State but rather whether the Attorney General, as the State's alter ego, is the true party in interest.

■ As noted above, a "real party in interest" is the person who, under the governing substantive law, is entitled to enforce the right asserted. In a diversity case, the governing substantive law is ordinarily state law. *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir.1977). Therefore, this Court will look to Missouri substantive law to determine whether the State is a "real party in interest" in this matter.

■ One test under that law to determine whether or not an individual is a proper party to a suit is whether it has some actual and justiciable interest susceptible of protection by that suit. *Kaufman v. Henry*, 520 S.W.2d 152, 154 (Mo.App. 1975).

As noted above, the State brought this action in response to numerous complaints voiced by consumers with regard to defendant Freedom's selling practices. Essentially, it seeks four types of relief.[1] First, it seeks redress for those who have already purchased property from defendant Freedom and who may have some legitimate complaint with regard to the business practices employed by the defendant relating to said transaction. Second, it seeks preliminary and permanent injunctions for the purpose of enjoining defendants from engaging in all of the acts and activities complained of in plaintiff's complaint. Third, it seeks an order appointing a permanent receiver of defendants' property

---

1. Specifically, the State seeks an order prohibiting the named Defendants from:

"[1] A. Engaging in any of the misrepresentations or fraud set forth in [plaintiff's complaint].

"B. Transferring, leasing, selling, secreting, or otherwise disposing of any of its assets, tangible and/or intangible, including, but not limited to, all real and personal property to include all land and all interests therein, investment devices, savings accounts, monies, accounts receivable, contracts for deed, rights to payment, vehicles, construction equipment, tools and materials, or disposing of or transferring or secreting any records which they have in their possession and which relate to the Defendants.

"[2] Plaintiff further prays this Court to issue the following orders after a hearing can be held on this matter:

"A. An Order finding the Defendants have violated the provisions of Section 407.020 R.S. Mo.1986.

"B. A Preliminary and Permanent Injunction to enjoin the Defendants from engaging in all of the acts and activities stated [in the complaint].

"C. An Order appointing a permanent receiver of Defendants' property located in Missouri. Said receiver to then manage and/or liquidate said assets in such a manner as he may so determine in the use of good business judgment to satisfy all claims made against Defendants. Said receiver is to operate under the direction of this Court.

"D. An Order setting aside the conveyance of Defendant Freedom Financial's property to Defendant Ascension Resorts, Ltd. as a fraudulent conveyance meant to prevent consumers entitled to relief in Missouri from receiving restitution.

"[3] An Order requiring the Defendants to pay to the State of Missouri all expenses incurred in the investigation and prosecution of this matter.

"[4] An Order requiring the Defendants to pay civil penalties in an amount to be determined by this Court.

"[5] An Order requiring the Defendants to make a payment to the Missouri Merchandizing Practices Revolving Fund in an amount equal to 10 percent of the restitution ordered by this Court.

"[6] An Order requiring Defendants to rescind any contracts procured by means of the actions complained of [in the complaint].

"[7] An Order requiring Defendants to pay restitution to any consumers harmed by the actions complained of in [the complaint].

"[8] Such other orders as this Court deems just and proper in the circumstances."

located in Missouri for the purpose of managing and/or liquidating said assets if necessary. Fourth, it seeks the payment of certain civil penalties.

The purpose of seeking this wide-ranging relief is more than to simply address the complaints of a few property owners. It is arguably an effort to ensure proper business practices in the buying and selling of so-called "resort" properties and/or time-shares in and around the various lake areas of this State. Many people in the State of Missouri have been and continue to be affected by the economic development of the various lake areas, both by way of tourism as well as by attracting new residents. This development most certainly has an impact on the economic well-being of the State as a whole because of the generation of property taxes and sales tax revenue for the state tax coffers.

For those reasons, this action was brought pursuant to the Missouri Merchandizing Practices Act. In *Missouri ex rel Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362 (Mo.App.1973), the Court found that the purpose of the Merchandizing Practices Act is to preserve fundamental honesty, fair play, and right dealings in public transactions. Furthermore, a state's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest.[2] *Kelley v. Carr*, 442 F.Supp. 346, 356–57 (W.D.Mich.1977); *State of New York by Abrams v. General Motors Corp.*, 547 F.Supp. 703, 705 (1982). "Surely some of the most basic of a state's quasi-sovereign interests include maintenance of the integrity of markets and exchanges operating within its boundaries, protection of its citizens from fraudulent and deceptive practices, support for the general welfare of its residents and its economy, and prevention of its citizen's revenues from being

wrongfully extracted from the state." *Kelley v. Carr*, 442 F.Supp. at 356–57.

In the case of *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), though discussing a matter in the context of the first amendment, the Supreme Court noted that "the State has a legitimate and indeed 'compelling' interest in preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct.'... We agree that protection of the public from these aspects of solicitation is a legitimate and important state interest." *Infra* at 462, 98 S.Ct. at 1921.

The Court believes that the interest of the State of Missouri as discussed above is sufficient to preclude characterizing the State as a nominal party without a real interest in the outcome of this lawsuit. The Court makes this finding in spite of the fact that many of the interests being asserted by the State of Missouri in this suit are obviously actually those of people who have had business dealings in the past with the defendants. As stated by the Court in *Abrams v. GMC, supra,*

> [r]ecovery of damages for aggrieved consumers is but one aspect of the case. The focus is on obtaining wide-ranging injunctive relief designed to vindicate the State's quasi-sovereign interest in securing an honest marketplace for all consumers. That recovery on behalf of an identifiable group is also sought should not require the Court to ignore the primary purpose of the action and to characterize it as one brought solely for the benefit of a few private parties.

*Abrams, supra* at 706, 707.

Accordingly, this Court concludes that the State of Missouri is not a nominal party to this action, and since the State's pres-

---

**2.** Broadly stated, quasi-sovereign interests "consist of a set of interests that the State has in the well-being of its populace.... Although the articulation of such interests is a matter for case-by-case development—neither an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract—certain characteristics of such interests are so far evident. These characteristics fall into two general categories. First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system."

*Alfred L. Snapp and Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602, 607, 102 S.Ct. 3260, 3266, 3268, 73 L.Ed.2d 995 (1982).

**1318**

ence is one of a "real party" and the State is not a "citizen" of any state, no diversity exists, thereby necessitating that this case be remanded to the Circuit Court of Stone County, Missouri. Accordingly, it is hereby

ORDERED that the plaintiff's motion to remand is hereby granted and this case is remanded to the Circuit Court of Stone County, Missouri. It is further

ORDERED that the Court's action today thereby renders moot all other pending motions in this matter.