**STATE OF MINNESOTA, by James E. ULLAND, Commissioner of Commerce, Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF ENTREPRENEURS OF AMERICA, and International Association of Entrepreneurs of America Benefit Trust, Defendants.**

Civ. No. 3–94–537.

United States District Court, D. Minn., Third Division.

July 12, 1994.

---

Prentiss Cox, Asst. Atty. Gen., St. Paul, MN, for plaintiff.

Steven Z. Kaplan, Fredrikson & Byron, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff State of Minnesota, by its Commissioner of Commerce, James E. Ulland (the "Commissioner"), commenced this action in Ramsey County District Court to enforce the terms of an Amended Cease and Desist Order the Commissioner issued against defendants International Association of Entrepreneurs of America ("IAEA"), and International Association of Entrepreneurs of America Benefit Trust (the "Trust").[1] The Trust removed the action to this Court. Before the Court is the Commissioner's Motion to Remand.

### Background

The Commissioner is the Minnesota Commissioner of Commerce.

---

1. IAEA and the Trust will referred to collectively as "the Defendants."

IAEA is a nonprofit membership association organized as a Texas corporation; its principal place of business is in the State of Texas.

The Trust is a nonprofit trust established under the laws of the State of Wisconsin; its principal place of business is located in Nashville, Tennessee.[2] It administers, through a Plan Document and Summary Plan Description No. 501 (the "Plan"), a plan of employee welfare benefits, including workers compensation insurance and health and hospitalization insurance, to members of the IAEA, their employees, and their employees' beneficiaries. The Plan is self-funded through contributions made by IAEA members and/or employee participants.

The Defendants contend that the Plan and the Trust constitute an "employee welfare benefit plan"[3] as defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1) (1988). They further contend that the Plan and the Trust constitute a "multiple employer welfare arrangement,"[4] or "MEWA," as described in ERISA, 29 U.S.C. § 1002(40)(A). Currently, five Minnesota employers participate in the Plan; approximately 166 individual employees participate in the Plan through those employers.

In July 1993, the Commissioner began inquiring about the activities of IAEA, the Trust, and the Plan. As a part of that

---

2. According to the Complaint, the Trustee of the Trust (the "Trustee") is Ross Fuller.

3. An "employee welfare benefit plan" means:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions or retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

4. A multiple employer welfare arrangement," or "MEWA," is

an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries....

29 U.S.C. § 1002(40)(A). The reference in § 1002(40)(A) to "any benefit described in paragraph 1" means the benefits described in § 1002(1).

Under ERISA's express preemption provision, 29 U.S.C. § 1144, a MEWA is subject to limited regulation and control by state authorities. Section 1144(b)(6) provides:

(A) Notwithstanding any other provision of this section—

(i) in the case of an employee welfare plan which is a multiple employer welfare arrangement and is fully insured (or which is a multiple employer welfare arrangement subject to an exemption under subparagraph (B)), any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides—

(I) standards, requiring the maintenance of specified levels of reserves and specified levels of contributions, which any such plan, or any trust established under such a plan, must meet in order to be considered under such law able to pay benefits in full when due, and

(II) provisions to enforce such standards, and

(ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this subchapter, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.

(B) The Secretary may, under regulations which may be prescribed by the Secretary, exempt from subparagraph (A)(ii), individually or by class, multiple employer welfare arrangements which are not fully insured. Any such exemption may be granted with respect to any arrangement or class of arrangements only if such arrangement or each arrangement which is a member of such class meets the requirements of section 1002(1) and section 1003 of this title necessary to be considered an employee welfare benefit plan to which this subchapter applies.

\* \* \* \* \* \*

(D) For purposes of this paragraph, a multiple employer welfare arrangement shall be considered fully insured only if the terms of the arrangement provide for benefits the amount of all of which the Secretary determines are guaranteed under a contract, or policy of insurance, issued by an insurance company, insurance service, or insurance organization, qualified to conduct business in a State....

inquiry, he requested that the Trustee provide certain information concerning the structure, finances, and coverage parameters of those entities. Apparently not satisfied with the responses provided to the requests, the Commissioner issued a Cease and Desist Order and Notice of Right to Hearing ("Order") against IAEA, the Trust, and other parties on February 9, 1994. The Order alleged that the Defendants offered for sale or sold workers compensation insurance in the State of Minnesota without being licensed as either an insurance company under Minn.Stat. §§ 60A.07, subd. 4 and 72A.41, or as an insurance agent under Minn.Stat. § 60K.02. The Order further alleged that the Defendants failed to file rates and rating plans with the Commissioner as required by Minn.Stat. § 79.56. Pursuant to statute, the Defendants were notified of their statutory right to request a contested case hearing within thirty days. On March 9, 1994, the Trustee requested such a hearing [5]; on the same day, he also commenced a declaratory judgment action [6] in this Court seeking declaratory and other relief under ERISA, 29 U.S.C. § 1132(a)(3).

Due to uncertainty over whether the Order permitted the Defendants to continue to collect premiums in Minnesota, the Commissioner issued an Amended Cease and Desist Order and Notice of Right to Hearing ("Amended Order") on March 16, 1994. The Amended Order directed the Defendants to cease and desist from transacting any insurance in Minnesota, including procuring or soliciting applications for insurance and collecting insurance premiums.

Subsequently, the Commissioner learned that the Defendants may be violating the Amended Order by continuing to collect insurance premiums in the State of Minnesota. Pursuant to Minn.Stat. § 45.027, subd. 5 (1994),[7] the Commissioner commenced this enforcement action in the name of the State of Minnesota. Thereafter, the Trust removed the action to this Court.

## Discussion

The Commissioner seeks to remand this action under 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Where a district court's subject matter jurisdiction is challenged, the party asserting jurisdiction—in this case, the Trust—has the burden to demonstrate that jurisdiction exists. In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal.

"What is required to invoke federal-court jurisdiction depends on whether it is the plaintiff or the defendant who wants to invoke it." *Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1144 (8th Cir.1992). A plaintiff can bring an action in federal district court if his claim "arises under" federal law, *see* 28 U.S.C. § 1331, or if it does not, if he is suing a citizen of a different state for a certain minimum sum of money. *See id.* § 1332(a). In both of these situations, the district court has "original jurisdiction" over the action.

---

29 U.S.C. § 1144(b)(6)(A)–(D).

5. On March 23, 1994, the Commissioner issued a Notice of Order for Pre–Hearing Conference with Administrative Law Judge Barbara Neilson.

6. *Ross Fuller, as Trustee of the International Association of Entrepreneurs of America Benefit Trust v. James E. Ulland, as Commissioner of Commerce of the State of Minnesota*, Civ. No. 3–94–162 (D.Minn.1994) (Kyle, J.).

7. Subdivision of Minn.Stat. § 45.027 provides, in pertinent part:

Subd. 5. Legal actions, injunctions; cease and desist orders. Whenever it appears to the commissioner that any person has engaged or is about to engage in any act or practice constituting a violation of any law, rule, or order related to the duties and responsibilities entrusted to the commissioner, the commissioner has the following powers: (1) the commissioner may bring an action in the name of the state in the district court of the appropriate county to enjoin the acts or practices and to enforce compliance.... Upon a proper showing, a permanent or temporary injunction, restraining order, or other appropriate relief must be granted; (2) the commissioner may issue and cause to be served upon the person an order requiring the person to cease and desist from the violations.

Minn.Stat. § 45.027, subd. 5. The statute also sets forth an administrative process for contesting the validity of any order issued by the Commissioner pursuant to his authority.

Defendants, by definition, cannot invoke the federal court's original jurisdiction. *Hurt*, 963 F.2d at 1144. In certain circumstances, however, a defendant may be able to invoke removal jurisdiction under 28 U.S.C. § 1441(a), which permits a case to be removed if a federal district court would have had original jurisdiction over the action. Although the requirements for original and removal jurisdiction are similar and they both relate to the end of obtaining federal-court jurisdiction, they are not identical. The Trust asserts that the Commissioner's action falls within both this Court's original (a) diversity jurisdiction under 28 U.S.C. § 1332(a), and (b) federal question jurisdiction under 28 U.S.C. § 1331.

### A.  Diversity Jurisdiction

The Commissioner contends that there is no basis for removing this action on the basis of diversity jurisdiction; it was commenced in the name of the State of Minnesota and a state is not a "citizen" for purposes of diversity jurisdiction under section 1332. The Trust responds that the Commissioner issued the Amended Order in his own name and official capacity; thus, this litigation does not involve the State of Minnesota. The Court agrees with the Commissioner.

■ Minn.Stat. § 45.027, subd. 5 specifically permits the Commissioner to bring an enforcement action "in the name of the state." Accordingly, the Trust's argument that the Commissioner commenced this action in his own name is factually incorrect;[8] moreover, titular references alone do not determine when a state is the real party in interest. In contrast, the state is a real party in interest when "the relief sought is that which inures to it alone, and in its favor the judgment, if for the plaintiff, will effectively operate." *Arkansas State Fish & Game Comm'n v. W.R. Wrape Stave Co.*, 76 F.Supp. 323, 331 (E.D.Ark.1948) (citations omitted); *see State of Missouri, ex rel. Web-*

*ster v. Freedom Finan. Corp.*, 727 F.Supp. 1313, 1315–16 (W.D.Mo.1989) (state is real party in interest if it is "the person who, under the governing substantive law, is entitled to enforce the right asserted"). The purpose of this enforcement action is not to benefit the Commissioner individually or merely a few private parties or entities; rather, it is arguably to ensure that companies selling insurance in Minnesota comply with Minnesota's regulatory statutes and regulations. This interest is sufficient to characterize the State of Minnesota as the real party in interest. As a state is not a "citizen" for purposes of diversity jurisdiction, *Freedom Finan. Corp.*, 727 F.Supp. at 1315–16 (citations omitted); *see generally* 15 Arthur R. Miller & Charles J. Wright, *Federal Practice & Procedure*, § 3723, at 324–25 (2d ed. 1985), no diversity exists, and this Court's original diversity jurisdiction is not a valid ground for removal.

### B.  Federal Question Jurisdiction

■ A defendant's assertion that a complaint contains a claim that "arises under" federal law is governed by the "well-pleaded complaint" rule. Under this principle, an action "arises under" federal law only if the federal question appears on the face of the *plaintiff's* properly pleaded complaint. In *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust Fund for Southern Cal.*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the Supreme Court elaborated on the scope of the well-pleaded complaint rule, stating that where the law creating a plaintiff's cause of action is state law, original federal jurisdiction may be available where— but only where—"it appears [from the face of the complaint] that some substantial, disputed question of federal law is a necessary element of ... the well-pleaded state claim[ ], or that ... the claim is 'really' one of federal law." *Id.* at 13, 103 S.Ct. at 2848.

---

8. The statute's language expressly authorizing the Commissioner to bring an action on behalf of the State of Minnesota distinguishes this case and the decision cited by the Trust *Missouri v. Homesteaders Life Ass'n*, 90 F.2d 543 (8th Cir.), *cert. denied*, 302 U.S. 717, 58 S.Ct. 37, 82 L.Ed. 553 (1937). In *Homesteaders Life*, the statute giving the Superintendent of Insurance the authority to sue did not empower that official to bring an action "in the name of the state"; in fact, the empowering statute expressly provided that the Superintendent was to sue "in his own name."

The preceding principles of law in mind, the Court turns to the facts of the case at bar. The Trust asserts removal was proper under the well-pleaded complaint rule because (1) the Commissioner must establish a substantial and "disputed issue of federal law as a necessary element of the claim," (Mem. Opp'n Mot. to Remand, at 4), and (2) ERISA "creates" the state law claim to compel the Trust to comply with Minnesota's insurance laws. *Id.* at 6.

### 1. Substantial, Disputed Question of Federal Law

■ The Commissioner's complaint states only one cause of action, a claim for injunctive relief under Minn.Stat. § 45.027, subd. 5. The Trust contends that the Commissioner's claim turns on the resolution of "several substantial federal questions," including (a) whether the Plan is an ERISA-protected employee welfare benefit plan, and (b) if it is, whether it is a MEWA subject to regulation only in accordance with 29 U.S.C. § 1144(b)(6)(A). (Mem.Opp'n Mot. to Remand, at 8.) These "questions," however, ask only whether the Plan is a MEWA protected by ERISA and whether ERISA preempts the state laws which purportedly permit Minnesota to regulate the Plan. Reasonably viewed, Minnesota law establishes the conditions, without reference to federal law, under which the Commissioner may sue to enforce a Cease and Desist Order; federal law—ERISA—becomes relevant only by way of a federal pre-emption defense to the state law enforcement action. A case simply may not be removed to this Court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint. *Franchise Tax Bd.*, 463 U.S. at 13–14, 103 S.Ct. at 2848; *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936) ("By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress ... because prohibited thereby").

### 2. "Really" a Federal Claim/Complete Pre-emption

■ A special corollary to the well-pleaded complaint rule, the "complete pre-emption" doctrine, applies where Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character"; that is, the claim is "really" one of federal law. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Where such complete pre-emption exists, the action is removable by the defendant notwithstanding the fact that the plaintiff's complaint rests solely on state law grounds.

ERISA is a federal statute to which the doctrine of complete pre-emption has been applied. *See e.g., Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1548. In *Metropolitan Life*, the Supreme Court held that not only was the plaintiff's state court action pre-empted by ERISA pursuant to *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), but the action itself was removable to federal district court, since the plaintiff's claims came within the scope of one of ERISA's six civil enforcement provisions, set forth at 29 U.S.C. § 1132(a).[9]

In reaching its determination, the Supreme Court reasoned that removal based on complete pre-emption is proper only where Congress has *clearly manifested* an intent that all causes of action falling within the scope of a federal statute be removable to federal court. *Metropolitan Life*, 481 U.S. at 64–65, 107 S.Ct. at 1547; *see also Franchise Tax Bd.*, 463 U.S. at 23–24, 103 S.Ct. at 2854. Examining the language and legislative history of section 1132(a), the Supreme Court concluded that Congress clearly manifested its intent to make actions within the scope of section 1132(a) removable to federal court. *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1548. Nowhere, however, did the Supreme Court state that a state law claim is removable simply because it may be pre-empted by ERISA; rather, the Court took care to note that its holding was limited to

---

9. *Franchise Tax Bd.* also considered it important for purposes of complete pre-emption to determine whether ERISA provides an alternative cause of action for any state law claims it might preempt. *Franchise Tax. Bd.*, 463 U.S. at 26, 103 S.Ct. at 2855.

state law claims that are pre-empted *and* that are within the scope of section 1132(a). *Id.,* 481 U.S. at 66, 107 S.Ct. at 1548; *see id.* at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring).

The Trust contends that the Commissioner's state law cause of action is "federal" in character because ERISA creates and defines a limited scope of insurance regulation in the case of a MEWA. In other words, the Trust asserts, the Commissioner would be pre-empted from pursuing this action in the name of the State *but for* the "insurance savings clause" in 29 U.S.C. § 1144(b)(2)(A), and the MEWA regulation provision in 29 U.S.C. § 1144(b)(6)(A).[10] Because ERISA gives life to Minnesota's ability to regulate a MEWA, the Trust continues, any well-pleaded complaint concerning a MEWA "must be deemed to allege ... that [Minnesota's] authority to regulate [the Trust] arises under, and is consistent with, the authority granted to [it] by section 1144(b)(6)(A)." (Mem.Opp'n Mot. Remand, at 8.)

The Commissioner responds that a statutory claim to enforce the Amended Order is unrelated to the validity of the Amended Order itself; thus, questions concerning its validity, including the question whether ERISA pre-empts Minnesota laws purportedly governing a MEWA, can be determined through the contested case proceedings permitted under Minn.Stat. § 45.027, subd. 5. The Commissioner further responds that a state is not included among the limited class of persons—participants, beneficiaries, fiduciaries, and the Secretary of Labor—entitled to sue under any of the civil enforcement provisions contained in 29 U.S.C. § 1132(a); thus, this action is not one to which the complete pre-emption corollary applies.

Fairly viewed, the Trust's assertion that ERISA creates the Commissioner's authority to regulate the Plan is merely another way of asserting an ERISA pre-emption defense. Under *Franchise Tax Bd.* and *Metropolitan Life,* however, a potential or even obvious pre-emption defense is not a talisman to removal jurisdiction. *Franchise Tax Bd.,* 463 U.S. at 12, 103 S.Ct. at 2848 (citation omitted); *see Metropolitan Life,* 481 U.S. at 67, 107 S.Ct. at 1548 (Brennan, J., concurring); *Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 943 (6th Cir.1994).

The Trust has not cited, and the Court has not found, any controlling decisions emanating from the Eighth Circuit.[11] In the absence of controlling authority, the Court agrees with other circuit courts and courts of this District that under the rule established in *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547, a state law cause of action is subject to removal under ERISA only if ERISA pre-empts the state law cause of action *and* it falls within the scope of ERISA's civil enforcement provisions in 29 U.S.C. § 1132(a). *Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 944 (6th Cir.1994); *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 8 (2d Cir.1992); *McLean v. Carlson Cos., Inc.,* 777 F.Supp. 1480, 1482 (D.Minn. 1991). It is undisputed that none of the six provisions in section 1132(a), nor any other provision in ERISA, provides the Commissioner with an alternative cause of action to enforce the Amended Order. Therefore, the State's cause of action under Minn.Stat. § 45.027, subd. 5 to enjoin the Trust from violating the Amended Order does not "arise under" federal law and does not come under this Court's removal jurisdiction.[12]

---

**10.** On the surface, the Defendants are correct, since if the Plan is a MEWA, the State may regulate it under Minnesota law only in accordance with 29 U.S.C. § 1144(b)(6)(A).

**11.** In *Deford v. Soo Line R. Co.,* 867 F.2d 1080 (8th Cir.), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989), the Eighth Circuit stated that in *Metropolitan Life,* the Supreme Court extended the complete preemption doctrine to permit removal based on claims arising under ERISA's civil enforcement provisions in 29 U.S.C. § 1132(a). *Id.* at 1084. Although *De-*

*Ford* could be viewed as establishing the scope of complete pre-emption in ERISA cases, that issue was not before the court on appeal; thus, the statement in *DeFord* is dictum that conforms with the other decisions cited below.

**12.** In no event will the Trust be precluded from bringing their pre-emption claim in a federal forum. If a state court rejects a claim of federal pre-emption, that decision may ultimately be reviewed on appeal by the United States Supreme Court. *Franchise Tax. Bd.,* 463 U.S. at 12 n. 12, 103 S.Ct. at 2848 n. 12.

### Conclusion

Based upon the foregoing, and the records, files, and proceedings herein, including the briefs and arguments of counsel, **IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. No. 3) is **GRANTED**. The Clerk of Court is directed to remand this action to the Ramsey County District Court, Second Judicial District, State of Minnesota.